**In re Douglas W. SIMPSON, Jr., Debtor.**

**Louis A. RYEN, as Trustee, Plaintiff,**

v.

**Francis A. PIERRI, Defendant.**

**Bankruptcy Nos. 83–20652, 84–2106A.**

United States Bankruptcy Court, W.D. New York.

June 12, 1986.

Lacy, Katzen, Ryen & Mittleman by Reid A. Holter and David D. MacKnight, Rochester, N.Y., for plaintiff.

John Bloise, Addison, N.Y., for defendant.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The trustee for the debtor's estate filed a complaint to recover an allegedly fraudulent conveyance made by the debtor to Francis A. Pierri. The complaint was filed pursuant to 11 U.S.C. § 544 and N.Y. Debt. and Cred. Law §§ 273–a and 276. A trial was held on November 14, 1985 at which time the only testimony heard was that of Mr. Pierri. The prefiled testimony of an expert witness for the trustee was allowed into evidence without the witness being present upon the consent of all parties. These two forms of testimonial evidence, along with several exhibits, constitute all of the evidence before this Court.

The debtor filed his petition for relief on June 15, 1983. Prior to that date, the debtor had been involved in numerous business dealings involving various business partners. One of those partners was Mr. Pierri.

Mr. Pierri, the debtor, and a third person, entered into a partnership in 1977. The intended primary source of revenue for the partnership was from the purchase and sale of real estate. The partnership bought several properties, sometimes by itself and sometimes as a partner in another partnership or in partnership with other individuals.

Mr. Pierri's initial capital contribution to the partnership was approximately $12,000. The majority of the $12,000 contribution came from the liquidation of investments which the debtor had previously made on Mr. Pierri's behalf. The relationship between the debtor and Mr. Pierri at that time was one of a very casual nature. An example of the casualness of the relationship between the debtor and Mr. Pierri was the unrestricted power Mr. Pierri gave the debtor to invest his money prior to the entering into of the partnership.

On three separate occasions in 1977, the partnership was involved in the purchase of real property which exceeded the financial capabilities of the partnership and required additional capital funding by the partners. Because Mr. Pierri was unable to fund his additional contributions directly, he borrowed those funds from the debtor. As in previous business dealings between these individuals, the terms of the borrowings were oral and imprecise. All borrowings were not to be secured, were to carry a reasonable interest rate, and would be repaid at the time when the asset associated with the respective borrowing was sold.

In March of 1980, the borrowing relationship between the debtor and Mr. Pierri was finally reduced to writing. The promissory note combined all three borrowings into one obligation and called for a 6½% interest rate with payment due on April 1, 1990.

The trustee seeks to have this note set aside as being a fraudulent conveyance. In order for the note to be set aside, the

trustee must either prove actual fraudulent intent under N.Y. Debt. and Cred. Law § 276 [1] or that the conveyance was made without fair consideration or not in good faith in which case the conveyance is deemed fraudulent under N.Y. Debt. and Cred. Law § 273–a. [2]

Because actual fraudulent intent is rarely susceptible to direct proof, [*See, In re Saphire*, 139 F.2d 34, 35 (2d Cir.1943) ], the trustee attempts to prove his case by relying on "badges of fraud." While proving actual fraudulent intent through the use of "badges of fraud" is permissible, [*See, In re Kaiser*, 722 F.2d 1574, 9 C.B.C.2d 910, 921 (2d Cir.1983) ], the trustee has misconstrued the facts of the case to make them appear to be "badges of fraud" when they are not.

The trustee relies on four factors at the time the note was signed which he deems "badges of fraud." Those four factors are a close personal relationship between the debtor and Mr. Pierri, no consideration for the note, the debtor's desperate financial condition, and the chronology of events leading up to the signing of the note.

The first factor was not proved by the trustee. In fact, the evidence strongly suggests the contrary. Mr. Pierri testified that throughout his business dealings with the debtor, they never socialized and with two rare exceptions only went to each other's home for business purposes.

■ The trustee next claims that no consideration was given at the time the note was signed. The signing of the note was only a memorialization of what transpired two to three years earlier. The consideration for the use of the funds by Mr. Pierri to increase his share of the contribution to the partnership was the promise to repay the loan when the associated assets were sold plus a reasonable rate of interest. The trustee's own expert witness states that certain interest rates at the time the loans were made varied from 5.15% to 7.71%, with a usury cap to individuals of 8½%. While 6½% may have been at the low end of the spectrum given the lack of security, it cannot be deemed to be unreasonable.

■ The trustee also views the term of the loan to be suspect and without consideration. Even though the due date of April 1, 1990 as incorporated in the promissory note may be different from the original understanding, it cannot be said that the changing of the term was without consideration. The original agreement required Mr. Pierri to repay the loans when the assets which were purchased with the borrowed funds were sold. Exactly when those assets would be sold was unknown at the time the funds were initially borrowed and also when the promissory note was signed. The consideration received by the debtor for the modification of the due date of the loans was the certainty of the repayment date. The fact that the assets associated with the loans were eventually sold prior to the April 1, 1990 due date is immaterial. Given the nature of the investments, it was quite possible that the partnership may not have had the opportunity to sell the assets prior to that date.

■ The other two factors relied on by the trustee also do not rise to the level of "badges of fraud." The loans were made in 1977. The promissory note was only a memorialization of those loans with the one exception as noted above in which adequate consideration was given. What transpired between the times the loans were made and when a record of those loans was reduced

---

**1.** § 276. Conveyance made with intent to defraud

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

**2.** § 273–a. Conveyances by defendants

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

to writing has no bearing on the intent of the parties at the time the original obligations were incurred. There was no evidence offered to indicate that the debtor was in a desperate financial situation at the time the loans were made, nor was there sufficient evidence introduced to indicate anything other than the reduction to writing of previously existing obligations.

Because no actual fraudulent intent was proven through direct evidence nor through the existence of "badges of fraud," the trustee's request that the promissory note be set aside as a fraudulent conveyance under § 276 of the N.Y. Debt. and Cred. Law is denied. In addition, the relief requested under § 273–a of the N.Y. Debt. and Cred. Law is also denied because there was fair consideration given for the obligations incurred by both parties and a lack of good faith has not been proven by the mere reduction to writing of the capital contribution borrowings.